UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
JING FANG LUO, and SHUANG QIU HUANG,
individually and on behalf of others similarly situated,

                                    Plaintiffs,              15-cv-03642 (WFK) (SLT)

              -against-

PANARIUM KISSENA INC. d/b/a Fay Da Bakery; PANARIUM
INC. d/b/a Fay Da Bakery; BOULANGERIE DE FAY DA INC.
d/b/a Fay Da Bakery; Patisserie de fay da, LLC d/b/a Fay Da
Bakery; LE PETIT PAIN INC. d/b/a Fay Da Bakery; BRAVURA
SKY VIEW CORP. d/b/a Fay Da Bakery; LA PAN MIETTE INC.
d/b/a Fay Da Bakery; FAY DA (QUEENS) CORP. d/b/a Fay Da
Bakery; FAY DA MOTT ST., INC. d/b/a Fay Da Bakery; FEI
DAR, INC. d/b/a Fay Da Bakery; LE PAIN SUR LE MONDE
INC. d/b/a Fay Da Bakery; BRAVURA LLC d/b/a Fay Da Bakery;
CHI WAI CORP. d/b/a Fay Da Bakery; PHADARIAN CORP.
d/b/a Fay Da Bakery; FAY DA MAIN STREET CORP. d/b/a
Fay Da Bakery; TORTA DI FAY DA d/b/a Fay Da Bakery;
BRAVURA PATISSERIE d/b/a Fay Da Bakery; NICPAT
CAFÉ INC. d/b/a Fay Da Bakery; FAY DA MANUFACTURING
CORP.; FAY DA HOLDING CORP. d/b/a Fay Da Bakery; FAY
DA HOLDING GEN 2 CORP. d/b/a Fay Da Bakery; HAN
CHIEH CHOU and KELLEN CHOW,

                                    Defendants.
-------------------------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**


                         LIPMAN & PLESUR, LLP
                         David A. Robins, Esq.
                         500 North Broadway, Suite 105
                         Jericho, New York 11753

                         LAW OFFICES OF CHRISTOPHER E. CHANG
                         Christopher E. Chang
                         140 Broadway, 46th Floor
                         New York, New York 10005
                         *Attorneys for Defendants*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ...........................................................................1

Plaintiff's Motion for Class Certification Under Fed. R. Civ. Proc. 23 Should
Respectfully Be Denied ........................................................................................1

BACKGROUND ...................................................................................................2

RELEVANT FACTS .............................................................................................3

The Defendant Policies at Issue Were Facially Lawful and Subject to Manager and
Location Specific Interpretation and Implementation .........................................4

   i.     These Policies Were Subject to Supervisor Location Specific Interpretation and
         Implementation ............................................................................................5

   ii.    No Licensing Was Required and, Any Training Required By Local Store
         Managers was Compensated ......................................................................6

ARGUMENT .........................................................................................................7

I.   PLAINTIFFS' MOTION IS UNTIMELY AND SHOULD BE DENIED .................7

   A.   Plaintiffs' Newly Submitted Affidavits are Suspect, Filled with Hearsay and
        Further Show Untimeliness of the Instant Motion ...................................9

II.  PLAINTIFFS FAIL TO MEET THEIR BURDEN OF PROVING COMPLIANCE
      WITH RULE 23 ..............................................................................................12

   A.  Plaintiffs Cannot Establish That the Class Is Numerous ........................13

   B.  Plaintiffs Fail to Prove Commonality Under Rule 23(a)(2) Because
       Discretionary Individual Location Manager Policy Implementation Prevents
       Common Answers to Common Questions ...............................................14

   C.  Plaintiffs Fail to Establish Typicality Under Rule 23(a)(3)...................18

   D.  Plaintiffs and Their Counsel are Not Adequate Representative as They Have
       Been Sanctioned, Engaged in Inappropriate Conduct and Have Been
       Decertified as Inadequate Class Counsel in Other Matters ...................19

III.  PLAINTIFFS CANNOT ESTABLISH THE FRCP 23(b)(3) STANDARD ............ 22

IV.  PLAINTIFFS' PROPOSED CLASS NOTICE IS INAPPROPRIATE..................... 24

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

Cases

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................................................................ 22, 23

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
  222 F.3d 52 (2d Cir. 2000) ............................................................................................ 19

*Bank v. Am. Home Shield Corp.,*
  2013 WL 789203,fn. 2 (E.D.N.Y. Mar. 4, 2013) ........................................................... 7

*Boykin v. Viacom Inc.,*
  1997 WL 706323 (S.D.N.Y. Nov. 12, 1997) ................................................................ 18

*Comcast Corp. v. Behrend,*
  569 U.S. 27 (2013) ........................................................................................................ 12

*Cruz v. Coach Stores, Inc.,*
  1998 WL 812045 (S.D.N.Y. Nov. 18, 1998) .................................................................. 7

*Emilio v. Sprint Spectrum L.P.,*
  2017 WL 3208535 (S.D.N.Y. July 27, 2017) ............................................................... 18

*Engel v. Scully & Scully, Inc.,*
  279 F.R.D. 117 (S.D.N.Y. 2011) .................................................................................. 16

*Glatt v. Fox Searchlight Pictures, Inc.,*
  811 F.3d 528 (2d Cir. 2015) .......................................................................................... 23

*Jianmin Jin v. Shanghai Original, Inc.,*
  2019 WL 4933607 (E.D.N.Y. Oct. 7, 2019) (denying motion ..................................... 22

*In re American Exp. Anti-Steering Rules Antitrust Litig.,*
  2015 WL 4645240 (E.D.N.Y. Aug. 4, 2015) ............................................................... 22

*In re Nassau County Strip Search Cases,*
  461 F.3d 219 (2d Cir. 2006) .......................................................................................... 23

*In re Visa Check/MasterMoney Antitrust,*
  280 F.3d 124 (2d Cir. 2001) .......................................................................................... 23

*Jeffries v. Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Elec.
  Indus.,*
  172 F. Supp. 2d 389 (S.D.N.Y. 2001) .......................................................................... 13

*Kapiti v. Kelly,*
  2008 WL 3874310 (S.D.N.Y. Aug. 18, 2008) ............................................................... 7

*Kassman v. KPMG LLP,*
  2018 WL 6264835 (S.D.N.Y. Nov. 30, 2018) .......................................................... 1, 15

*Lin v. Everyday Beauty Amore Inc.,*
  2019 WL 3037072 (E.D.N.Y. July 11, 2019) .............................................................. 10

*Lujan v. Cabana Mgmt., Inc.,*
  284 F.R.D. 50 (E.D.N.Y. 2012) .................................................................................... 10

*Moore v. PaineWebber, Inc.,*
  306 F.3d 1247 (2d Cir. 2002) ........................................................................................ 23

*Moore v. Publicis Grp. SA,*
  2014 WL 11199094 (S.D.N.Y. May 15, 2014) ............................................................ 18

*Pandit v. Saxon Mortg. Servs., Inc.,*

2013 WL 12364120 (E.D.N.Y. June 5, 2013).................................................................. 9
*Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.*,
    2018 WL 1831850 (S.D.N.Y. Apr. 17, 2018) ............................................................ 23
*Salon Fad v. L'Oreal USA, Inc.*,
    2011 WL 4089902 (S.D.N.Y. Sept. 14, 2011) .......................................................... 15
*Severin v. Project Ohr, Inc.*,
    2012 WL 2357410 (S.D.N.Y. June 20, 2012)............................................................ 24
*Sheehan v. Purolator, Inc.*,
    103 F.R.D. 641 (E.D.N.Y. 1984) ............................................................................. 13
*Sterling v. Evntl. Control Bd. Of City of New York*,
    793 F.2d 52 (2nd Cir. 1986) ..................................................................................... 7
*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
    546 F.3d 196 (2d Cir. 2008) .................................................................................... 12
*Trawinski v. KPMG LLP*,
    2012 WL 6758059 (S.D.N.Y. Dec. 21, 2012)........................................................... 18
*Velasquez v. Digital Page, Inc.*,
    303 F.R.D. 435 (E.D.N.Y. 2014) ........................................................................ 1, 15
*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................................... Passim
*Weiss v. La Suisse, Societe d 'Assurances Sur La Vie*,
    161 F. Supp. 2d 305 (S.D.N.Y. 2001)........................................................................ 7
*White v. Western Beef Properties, Inc.*,
    2011 WL 6140512 (E.D.N.Y.2011) ......................................................................... 15

Rules

Fed. R. Civ. P. 23(b)(3)(A) & (D) ........................................................................... 23
Fed. R. Civ. Proc. 23 ...................................................................................... Passim
Federal Rule of Civil Procedure 23(a)(4) ................................................................... 19
Federal Rule of Civil Procedure 23(c)(1)(A) ............................................................... 7
FRCP 23(a) ......................................................................................................... 22
FRCP 23(b)(3) ...................................................................................... 2, 22, 23, 24
Rule 23(a) and (b) ................................................................................................ 25
Rule 23(a)(2) ................................................................................................ 1, 14
Rule 23(a)(3)22 ............................................................................................. 1, 18
Rule 23(b) ......................................................................................................... 12
Rule 23(c)(1) ...................................................................................................... 25

Other Authorities

*Class Certification in the Age of Aggregate Proof*,
    84 N.Y.U.L.Rev. 97 (2009)................................................................................... 15

## I. PRELIMINARY STATEMENT

**Plaintiffs' Motion for Class Certification Under Fed. R. Civ. Proc. 23 Should Respectfully Be Denied.**

Defendants respectfully request that Plaintiffs' motion be denied. First, Plaintiffs' motion for class certification is untimely and prejudicial and was clearly not filed "at an early practicable time" in this litigation. Fed. R. Civ. Proc. 23. Plaintiffs' instant motion for class certification is merely another last-ditch tactic employed after Plaintiffs' collective action strategy was mostly rejected and opt ins failed to materialize or follow through on their litigation obligations. Discovery was completed in 2019 and this matter should be ready for trial related to the eight existing Plaintiffs. This is not a time to revisit litigated issues or to expand this case to many other locations and throw it back into litigation for years to come. Second, Plaintiffs' motion should be denied as they are unable to establish the requisite Rule 23 elements because, *inter alia*, their arguments are based on indisputably lawful policies that may have been implemented differently by each local manager/supervisor at each location on a case by case basis and thus do not form the necessary glue to fulfill the Rule 23 elements. There will not be common answers to common questions and so certification should be denied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Kassman v. KPMG LLP*, No. 11 CIV. 3743 (LGS), 2018 WL 6264835 (S.D.N.Y. Nov. 30, 2018) (denying class certification as no commonality where managers have discretion in implementing a common policy and noting the difficulty of proceeding as a class when the alleged unlawful behavior was the product of local supervisors exercising their discretion); *Velasquez v. Digital Page, Inc.*, 303 F.R.D. 435, 441 (E.D.N.Y. 2014) (same). Finally, there is no adequacy of representation to support Plaintiffs' motion. The putative class representatives were previously sanctioned by this Court for litigation failures and the putative

class counsel's inappropriate solicitations and flouting of this Court's orders along with prior case decertification for inadequate representation, supporting denial of class certification.

## II. BACKGROUND

This brief is submitted in opposition to Plaintiffs' Motion for Class Certification.   This Action was filed in 2015 as a putative collective and class action against 21 corporate Defendants and 2 individual Defendants. Plaintiffs then filed an Amended Complaint ("Amended Complaint") on September 2, 2015.  Early on, the Magistrate ordered Limited Discovery be exchanged in order to get a sense of the nature of this Action. (DKT 53) ("DKT" as used herein refers to the ECF Docket Number for this matter).  Defendants responded to the Limited Discovery requests with responses and documentation that showed lawful uniform and meal credit policies.   Thereafter, Plaintiffs' motion for conditional certification for all 21 Defendant locations was denied in large part and the Notice was limited to the 3 Defendant locations where the Plaintiffs worked.[1]  (DKT 57, 60.)  A total of 20 individuals opted in to the Action amid allegations of improper communications and solicitation through Plaintiffs' counsel. (DKT 78, 80.)  Plaintiffs have twice been sanctioned by the Magistrate for failure to follow Court Orders and for a Motion to Compel discovery.  (DKT 117 and 138.)  Of the 20 Opt In Plaintiffs, 14 have been dismissed with prejudice from this Action for failure to participate in discovery and defying Court Orders.  (DKT 131 and 145.)  This is in contradiction to Plaintiffs' counsel's representations as to the number of Plaintiffs currently in this matter.

---

[1] Defendants contest joint liability and individual liability claims as argued in the SJ Motion (DKT 151) and do not believe these issues are relevant to a determination of class certification for the issues at hand.  Similarly, the locations where Plaintiffs worked were established through deposition testimony and documents provided by Defendants.  See SJ Motion Memorandum of Law and Exhibits (DKT 151).  Any contradictory statements in Affidavits should be rejected.

Ultimately, this Action now consists of eight Plaintiffs who worked at Defendant locations alleging uniform and meal credit violations where such policies have already been established as lawful in discovery.  Plaintiffs, for the first time, requested permission to file a class certification motion (DKT 143) in the then 4-year old case only after Defendants requested permission to file for summary judgment (DKT 141) and discovery had closed.  Defendants opposed Plaintiffs' request to file a class certification motion as unwarranted and untimely, noting the Magistrate's comments at the May 13, 2019 conference expressing his belief that such a motion would seem to be untimely if made before him.  (DKT 140.)  The Court granted Defendants' request and denied Plaintiffs' request.  (DKT 144.)  After the Court found a trial needed to resolve factual disputes, Plaintiffs have now moved for Class Certification.

## III.  RELEVANT FACTS

The relevant facts in this case highlight the inappropriate nature of Plaintiffs' motion. The eight Plaintiffs are former workers at Defendant retail locations. (See Summary Judgment Robins Decl. dated June 7, 2019, DKT 151-3 through 151-33, Ex. A, Luo Tr. 10-11; Ex. B, Huang Tr. 11; Ex. C, Zheng Tr. 10-11; Ex. D, Su Tr. 11-12; Ex. E, Wang Tr. 10; Ex. F, Cheng Tr. 10; Ex. G, Zhou Tr. 12-13; Ex. H, Liao Tr. 9.) (The Summary Judgment Robins Declaration was submitted via ECF in support of Defendants' Motion for Summary Judgment and will be referenced as "Robins SJ Decl." and should be deemed incorporated herein along with all Exhibits referenced for purposes of Defendants' Opposition to Plaintiffs' Class Certification Motion.)  As relevant to the current opposition to the motion for class certification, Defendants are retail locations, a manufacturing entity, holding companies and individuals.  The entities where Plaintiffs worked were retail locations that sold food and drinks to customers.  (Amended Complaint.)  In contrast, Defendant Fay Da Manufacturing Corp. is a manufacturing plant that

3

produces raw product that is sold to retail stores, including the Defendant retail locations where Plaintiffs worked.  (Robins SJ Decl. Ex. K, Chou Tr. 18.)  Similarly, Defendants Fay Da Holding Corp. and Defendant Fay Da Holding Gen 2 Corp. are not retail locations.  (Robins SJ Decl. Ex. K, Chou Tr. 18- 19.)

**The Defendant Policies at Issue Were Facially Lawful and Subject to Manager and Location Specific Interpretation and Implementation**

Defendants maintained facially lawful policies.  For example, Plaintiffs were provided meals at Defendants' locations where they worked. (Robins SJ Decl. Ex. J, Ma 01-25-19 Tr. 96-99; 101-103; Ex. K, Chou Tr. 62-63; 66, Ex. BB and DD.)  Pursuant to written policy, Plaintiffs were permitted to eat any foods in the location where they worked that were produced by Defendants. (Robins SJ Decl. Ex. BB and DD.)  These foods included, drinks, such as coffee, tea, milk, juice and other drinks. (Robins SJ Decl. Ex. J, Ma 01-25-19 Tr. 96-99; 101-103.) These foods also included items such as fruits, vegetables, grains or potatoes, meats, eggs, poultry, dairy and legumes. (Robins SJ Decl. Ex. J, Ma 01- 25-19 Tr. 96-99; 101-103.)

Plaintiffs were provided with uniforms when they began working consisting of shirts, head scarves and aprons. (Robins SJ Decl. Ex. J, Ma 01-25-19 Tr. 128; Ex. A, Luo Tr. 23-24; Ex. B, Huang Tr. 21-22; Ex. C, Zheng Tr. 23; Ex. D, Su Tr. 34-35; Ex. E, Wang Tr. 24-25; Ex. F, Cheng Tr. 27-28; Ex. G, Zhou Tr. 32-34; Ex. H, Liao Tr. 17-19.)  These uniforms were wash and wear and did not need to be dry cleaned or otherwise specially washed. (Robins SJ Decl. Ex. A, Luo Tr. 24-25; Ex. B, Huang Tr. 23; Ex. C, Zheng Tr. 23-24; Ex. D, Su Tr. 37; Ex. E, Wang Tr. 25-26; Ex. F, Cheng Tr. 29-30; Ex. G, Zhou Tr. 38; Ex. H, Liao Tr. 21; Exs. P, Q, R, S, T, U, V, W, X, Y, Z, AA, CC and DD.) Plaintiffs were also offered a free of charge laundering service through Defendants. (Robins SJ Decl. Ex. K, Chou Tr. 79-80; 83-84; Ex. J, Ma 01-25-19 Tr. 128, 130; Ex. L, Chow Tr. 58-60.) Plaintiffs could drop off uniforms at their workplace and

receive a laundered uniform within a day. (Robins SJ Decl. Ex. K, Chou Tr. 79-80; 83-84; Ex. J, Ma 01-25-19 Tr. 128, 130; Ex. L, Chow Tr. 58-60.)

**These Policies Were Subject to Supervisor Location Specific Interpretation and Implementation**

Significantly, as each Defendant location is independent and operated by its own manager, each manager had the discretion to independently implement the policies at issue here, including the meal policy, uniform policy and time training, hiring, firing and discipline.  (See Defendants' Responses to Plaintiffs' Third Set of Interrogatories, stating in relevant part that **"Defendant locations had a meal credit policy which was subject to discretionary implementation at the location and supervisor specific level and thus not common to all Defendants or to all employees"** attached as Ex. 10 to Troy Affirmation; Robins SJ Dec. Ex. J, Ma 01-25-19 Tr. 84-85 (up to store manager decide whether to keep track of any food taken by store location workers), Ma 01-25-19 Tr. 88, 93-95 (store manager decides if a meal credit applies), Ma 01-25-19 Tr. 105-108 (store managers at each location decide if, when and where training occurs and what payroll pays for training); Ma 01-25-19 Tr. 126-127 (store managers decide who to hire at each specific location), Ma 01-25-19 Tr. 128 (4 sets of uniforms supplied and free laundry service but store managers at each location inform employees about store uniform and laundering policies), Ma 01-25-19 Tr. 129-130 (store managers at each location responsible for implementation of replacement of uniforms and to notify employees and Fay Da);  Ex. K, Chou Tr. 26-27, 70-71 (local store managers responsible for hiring, firing, discipline.)

As a result, there were differences between implementation of the policies at issue depending upon the manager and differing understandings among employees, both within one location and among locations as to what could or could not be eaten as a meal or as to the

uniform policies.  Plaintiffs' own deposition testimony evidenced that store managers influenced these policies.  For example, see the following testimony from Plaintiffs, Robins SJ Decl. Ex E, Wang, Tr. 23 (39th Avenue location manager told her not permitted to eat lotus wraps), Ex. D, Su Tr. 31-32 (Kissena location manager told her lotus wraps permissible to eat).  The lotus wraps are a significant example as these contained meat and vegetables and would qualify along with the beverages as meals under the New York Labor law.  The uniform set policy also varied according to Plaintiff and location.  See Robins SJ Decl. Ex. F, Cheng, Tr. 27-28 (Kissena location receive one set of uniforms) Ex. A, Luo Tr. 26 (Main Street location manager gave her 3 sets of uniforms), Ex. C, Zheng Tr. 24 (Kissena location received 2 sets of uniforms) Ex. E, Wang, Tr. 25 (39th Avenue location manager gave her 2 uniform sets).

There are even differences within the same location as to what a manager told Plaintiffs about the meal policy and how it was applied.  For example, see Robins SJ Decl. Ex. B, Huang Tr. 20; Ex. D, Su Tr. 31-32 (Main Street location manager told deponents they could eat lotus wraps that contain meat and vegetables) and compare their testimony with Ex. G, Zhou Tr. 28, 30-31 (same Main Street location never ate lotus wraps and testified that the relationship between worker and the store manager decided who could eat what items at the store) and Ex. A, Luo Tr. 21 (no lotus wraps at Main Street location).  This shows that even within a single store location there is not common answers to the meal policy question and that individualized analyses are needed.

**No Licensing Was Required and, Any Training Required by Local Store Managers Was Compensated**

Plaintiffs' jobs did not require any licensing for work. (Robins SJ Decl. Ex. A, Luo Tr. 15; Ex. B, Huang Tr. 16; Ex. C, Zheng Tr. 18-19; Ex. D, Su Tr. 27-28; Ex. E, Wang Tr. 20-21; Ex. F, Cheng Tr. 21; Ex. G, Zhou Tr. 25; Ex. H Liao Tr. 14-15.) There was no policy requiring

training.  All time spent training was compensated and these matters were at local store manager implementation. (Robins SJ Decl. Ex. A, Luo Tr. 15; Ex. B, Huang Tr. 16; Ex. C, Zheng Tr. 18-19; Ex. D, Su Tr. 27-28; Ex. E, Wang Tr. 20-21; Ex. F, Cheng Tr. 21; Ex. G, Zhou Tr. 25; Ex. H Liao Tr. 14-15; Ex. J Ma Tr. 1-5-108 and Ma 01-25-19 Tr. 105-108 (store managers at each location decide if, when and where training occurs and what payroll pays for training).

## IV. ARGUMENT

### POINT I PLAINTIFFS' MOTION IS UNTIMELY AND SHOULD BE DENIED

Plaintiffs waited over 4 years before even requesting permission to file a Rule 23 class certification motion. Plaintiffs' timing, strategy, tactics and dilatory conduct militate against class certification as it is untimely and prejudicial to Defendants.  Federal Rule of Civil Procedure 23(c)(1)(A) governs the timing of class certification. Fed. R. Civ. P. 23(c)(1)(A) specifically provides that, "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." *Id.  Bank v. Am. Home Shield Corp.*, No. 10-CV-4014, 2013 WL 789203, at *3 fn. 2 (E.D.N.Y. Mar. 4, 2013) ("Bank is cautioned, however, that class certification is to be determined "[a]t an early practicable time after a person sues or is sued as a class representative. If it appears that Bank is dilatory in seeking certification, the Court may conclude that a viable class action was never possible"); *Sterling v. Evntl. Control Bd. Of City of New York*, 793 F.2d 52, 58 (2nd Cir. 1986) ("A party's failure to move for class certification until a late date is a valid reason for denial of such a motion"); See also *Kapiti v. Kelly*, 2008 WL 3874310 at *3 (S.D.N.Y. Aug. 18, 2008) (denying motion for class certification as untimely when made a year after the complaint was filed and one month before the close of discovery); *Weiss v. La Suisse, Societe d 'Assurances Sur La Vie,* 161 F. Supp. 2d 305, 320 (S.D.N.Y. 2001) (denying motion for class action on the

eve of trial); *Cruz v. Coach Stores, Inc.*, 1998 WL 812045 (S.D.N.Y. Nov. 18, 1998), rev'd on

other grounds, 202 F.3d 560 (2d Cir. 2000).

Plaintiffs had all information necessary for making this motion at a much earlier date in

this litigation.  In fact, Plaintiffs' Complaint and Amended Complaint alleged common policies

and were crafted as putative Rule 23 Class Actions.  Further, in 2016, Plaintiffs based their

FLSA collective action certification motion on discovery obtained early on in this matter asking

for FLSA certification at all Defendant locations.  If Plaintiffs felt confident to make such a

motion, then they certainly could have made it a Rule 23 motion as well in 2016.  This is

significant in that it shows Plaintiffs had the information and ability to make such a motion at an

early practicable time but did not do so.   Significantly, Plaintiffs based their conditional

certification motion on Defendants' Responses to Limited Interrogatories arguing that a common

policy was at play at all Defendant locations.  For example, Defendants provided an unlimited

supply of uniforms, such that Plaintiffs were not required to maintain or launder their uniforms at

all. (Defendants' Responses to Limited Interrogatory Number 5 dated August 8, 2016,

Defendants' Responses to Plaintiffs' Limited Request for the Production of Documents Numbers

3, 4 and 5 dated August 8, 2016 and documents attached thereto indicating laundry service

receipts for Defendants, and Handbook language informing Plaintiffs of the laundering service

attached as Exhibits BB and DD to the Robins SJ Declaration dated June 7, 2019 to the

Summary Judgment brief.)

Plaintiffs' current argument that its four-plus year failure to move for class certification

should be excused because it was waiting for other information should be rejected.  Plaintiffs'

reference to Defendants Responses to Plaintiffs' Third Set of Interrogatories in March 2019 is

misleading and inapposite to the timeliness issue for class certification.  As discussed above,

Defendants responded with information about policies years before this request and Plaintiffs had sufficient information then for a class motion.  Instead Plaintiffs chose the FLSA collective action route.  It is more likely that Plaintiffs realized early on that they did not have the facts to bring and win a Rule 23 class certification motion. Defendants responded appropriately to any and all discovery responses throughout this litigation.  If Plaintiffs chose to send yet another set of Interrogatories in February 2019, years after the matter began, that was their decision. Defendants appropriately responded by referencing the prior discovery responses provided years earlier and also by responding further to the Interrogatories presented.  It is also significant to note that Magistrate Tiscione also stated on the record at the hearing on May 13, 2019 that it was Plaintiffs' own fault if they did not correctly word their initial Limited Interrogatory Requests, that it was not the fault of Defendants and that the Court would not excuse Plaintiffs' shortcomings in this litigation by extending any class certification deadlines.  In essence, the Court already rejected the timeliness of Plaintiffs' arguments for class certification and this should be considered in the present motion as well.  *Pandit v. Saxon Mortg. Servs., Inc.*, No. CV11-3935 (JSG)(RB), 2013 WL 12364120 (E.D.N.Y. June 5, 2013) (cautioning that "Plaintiffs remain under an obligation to move for class certification at an early practicable time, and the parties' discovery requests should be tailored as such.")

**Plaintiffs' Newly Submitted Affidavits are Suspect, Filled with Hearsay and Further Show Untimeliness of the Instant Motion**

It is also noteworthy that Plaintiffs are attempting to use Affidavits that are of suspect origin and authenticity in support of their motion, that these affidavits contradict Plaintiffs' deposition testimony, are hearsay and should be rejected.  First, Plaintiffs' Affidavits all claim to be made recently in support of the present motion for class certification, yet they are all dated in late 2018, years before this motion.  Further, the Affidavits' signature pages appear separately

from the main body of the Affidavits leaving the impression that these signatures may not belong to the body of the Affidavits. Additionally, some of the Affidavits ask the Court to allow them to represent a class, yet there is no application for some of these Plaintiffs to be a class representative. Further, some Plaintiff Affidavits attempt to name individuals at other locations who were subject to similar policies. This contradicts prior deposition and discovery responses in which such individuals were not named or identified and is also clearly hearsay. *Lin v. Everyday Beauty Amore Inc.* 2019 WL 3037072 (E.D.N.Y. July 11, 2019) (rejecting affidavits provided in a Troy Law Firm class certification motion as hearsay and also denying class certification, citing to *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 64-65 (E.D.N.Y. 2012), striking inadmissible hearsay testimony in affidavits reasoning that the Second Circuit would require evidence to be admissible in support of a Rule 23 motion.) Further, the policies identified are simply the lawful policies related to meal credits and do not indicate the individualized matters of store location manager discretion in implementation of these policies. (See Relevant Facts Section and Argument Section for citations to transcripts and other evidence that manager level implementation at each store does not provide the common answers necessary for class certification.)

Significantly, the dates on these Affidavits would show that these Affidavits were created right before Plaintiffs were deposed and yet these Affidavits were not previously produced by Plaintiffs. Thus, Defendants were never given the opportunity to depose these Plaintiffs on these prior statements and Plaintiffs should be sanctioned for this omission and these Affidavits stricken from the record. Significantly, if these Affidavits were submitted in 2018 this also works against Plaintiffs filing a timely class certification motion as it should have done so in 2018 when it put together these Affidavits.

At an "early practicable time" Plaintiffs made the strategic decision to forgo a Rule 23 class action motion and instead to seek FLSA conditional certification in hopes of attracting enough interest in this matter for a large settlement.  As described above, their strategy backfired. Plaintiffs should not be rewarded with yet another bite at the apple, four plus years later, especially when doing so prejudices Defendants and flouts the FRCP mandates and existing case law.  Plaintiffs grabbed for collective certification with respect to all locations, but only met the very lenient standards for collective certification at three locations.  (DKT 57, 60.) Then, when faced with a lack of response or interest to the opt in notice, Plaintiffs' counsel resorted to improper solicitations and communications with the putative class. (See arguments below in adequacy of representation section.)  Of the 20 who opted in to this Action, the majority (14) were later dismissed with prejudice for failure to participate.  Moreover, Plaintiffs, including the Named Plaintiffs and putative Class Representatives failed to follow the Court's Orders in discovery and settlement conferences and were sanctioned and ordered to pay attorneys' fees to Defendants.  This Order and the attorneys' fees were ignored by Plaintiffs and to date they have failed to pay the Court Order sanction and attorneys' fees.  (See arguments below in adequacy of representation section.)

Contrary to Plaintiffs' position, it was not a lack of information that impacted bringing a a motion for class certification.  It is clear that it was poor strategy and lack of interested Plaintiffs that caused this case to languish.  Significantly, Magistrate Tiscione denied Plaintiffs' attempt to change tactics near the end of discovery by requesting an extension of time to file a class certification motion to the time for dispositive motion date, (DKT 132, 134.)  Magistrate Tiscione further noted, on the record, at the hearing on Plaintiffs' motion to extend time for class certification motion on February 8, 2019, that he was of the opinion that Plaintiffs had waited too

long to bring a class certification motion and that if such a motion was put before him to decide he would rule it untimely.  The Magistrate noted his extensive involvement in this matter over all these years as a basis for his opinion on untimeliness of a class certification motion.

Defendants will also be prejudiced in that the individual store managers may not be available now, years later, for extended discovery or to act as witnesses.  Plaintiffs chose a collective FLSA opt in motion early on and this matter was limited to only three locations.  To now extend the matter to all locations would prejudice Defendants' ability to provide defenses, discovery has long closed and this matter is next slated for trial.  Accordingly, Plaintiffs' motion for class certification under Fed. R. Civ. Proc. 23 should respectfully be denied as untimely and prejudicial.

## POINT II  PLAINTIFFS FAIL TO MEET THEIR BURDEN OF PROVING COMPLIANCE WITH RULE 23

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is...prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.," *Dukes*, 564 U.S. at 350, and satisfy "at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  The Court must conduct a "rigorous analysis," *Dukes*, 564 U.S. at 350-51, including "to assess all of the relevant evidence admitted at the class certification stage, to resolve factual disputes relevant to each Rule 23 requirement, and to find that whatever underlying facts are relevant to a particular Rule 23 requirement have been established, notwithstanding an issue's overlap with the merits." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008) (internal quote marks and alterations omitted). Plaintiffs must prove each Rule 23 element by a preponderance of the evidence.  *Id*.  Failure to satisfy even one precludes certification.  *Id*.  Plaintiffs here fail to prove the Rule 23 requirements.

### A. Plaintiffs Cannot Establish That the Class Is Numerous

Plaintiffs cannot establish numerosity.  Plaintiffs fail to show how any class members have been aggrieved by a common policy with common answers.  Further, although Plaintiffs contend that there are over 2500 potential class members, they have provided no proof for such an allegation.  Next Plaintiffs allege that there are at least 336 class members within the three locations in the FLSA collective action locations, however, this is untrue as Plaintiffs were counting data entry lines in Ex. 8 to the Troy Affirmation and not accounting for actual names and eliminating double entries.  Further, they have not established that any of them have actually been aggrieved by any of Defendants' policies.

The numerosity requirement can only be met by a proposed class of individuals who have actually been aggrieved by the conduct forming the basis of the complaint.  See *Sheehan v. Purolator, Inc.*, 103 F.R.D. 641, 649 (E.D.N.Y. 1984).  "Although the court may make common sense assumptions to support a finding of numerosity, it cannot do so on the basis of pure speculation without any factual support." *Jeffries v. Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Elec. Indus.*, 172 F. Supp. 2d 389, 394 (S.D.N.Y. 2001) (internal quotations and citations omitted).

In this case, despite the extensive discovery conducted, there is no evidence that employees other than Named Plaintiffs and those who opted in from the three locations in the FLSA collective action were possibly aggrieved.  Indeed, Plaintiffs have not submitted Affidavits from any other potential class members from the locations not certified for collective action stating that they were similarly aggrieved.  The Court cannot presume that merely because Plaintiffs were aggrieved, other workers at all other locations were aggrieved. To do so would be forcing this Court to find numerosity on the basis of "pure speculation".

Further, despite Plaintiffs' efforts to thwart this Court's Order against unauthorized solicitation (see Adequacy of Representation Section below) by contacting, calling and otherwise reaching out via social media and chat sessions, Plaintiffs failed to find anyone from other locations interested in joining this Action.  Plaintiffs cannot even show that other employees from the three locations that were collectively certified felt aggrieved.  Only 20 employees among all three locations opted in to this matter, of those 14 were dismissed with prejudice for failure to engage in discovery or litigation.  The lack of any type of substantial response to the FLSA collective action notice is the strongest evidence that there are not 40 or more individuals who have been aggrieved.  If the number of aggrieved individuals were sufficiently numerous, then other employees would have participated in the collective action; but they did not. Consequently, the motion must be denied.

### B. Plaintiffs Fail to Prove Commonality Under Rule 23(a)(2) Because Discretionary Individual Location Manager Policy Implementation Prevents Common Answers to Common Questions

Plaintiffs argue that policies exist that are "a straightforward, centralized, uniform policy regarding the taking of meal credits, provision of foodstuffs for meals, payment of wages during training periods, uniform purchase, and uniform maintenance."  (Plaintiffs' Brief in Support) This is both inaccurate and focuses on the wrong issue for purposes of certification.  Instead, Plaintiffs cannot show common answers to these questions as any lawful policies were subject to implementation at the local supervisor level at each location.   Plaintiffs are unable to prove commonality of class claims and so class certification should be denied.

Plaintiffs must not only prove "questions of law or fact common to the class" Fed. R. Civ. P. 23(a)(2) but **that the questions must "generate common answers"** that "drive the resolution of the litigation."  *Dukes*, 564 U.S. at 345, 350 (cite, internal quote marks omitted;

emphasis original).  As described by the Supreme Court, the relevant issue for class certification is not the " 'common questions' " but the ability of the class to "generate common *answers* ..." *Id.* (quoting *Negareda, Class Certification in the Age of Aggregate Proof,* 84 N.Y.U.L.Rev. 97, 132 (2009)) (emphasis in the original).  The main thrust from *Dukes* was that a "common question" for purposes of Rule 23 is one for which the answer will result in a "classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  "What matters to class certification" the Supreme Court continued, "is not the raising of common 'questions' - even in droves - but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (emphasis in original); *see also Salon Fad v. L'Oreal USA, Inc.,* No. 10 CIV. 5063 DLC, 2011 WL 4089902 (S.D.N.Y. Sept. 14, 2011) (following *Duke's* analysis in denying class certification).  Plaintiffs here have offered no basis to refute the Supreme Court's clear holding in *Dukes* as facially lawful policies implemented differently at local manager discretion does not meet the common answers standard.  Consequently, the motion must be denied.  Also see, *Kassman*, 2018 WL 6264835 (S.D.N.Y. Nov. 30, 2018) (denying class certification as no commonality where managers have discretion in implementing a common policy and noting the difficulty of proceeding as a class when the alleged unlawful behavior was the product of local supervisors exercising their discretion, citing  *Dukes*, 564 U.S. 338 (2011)); *Velasquez* 303 F.R.D. at 441 (E.D.N.Y. 2014) (same); also see *White v. Western Beef Properties, Inc.,* 2011 WL 6140512, \*2 (E.D.N.Y.2011)).

   In the instant matter, Plaintiffs argue that commonality is present simply because lawful policies existed at Defendants, such as meal credits or uniform policies.  However, Plaintiffs fail

to point out that lawful policies cannot form the basis of class certification and unless Plaintiffs can show that common "answers" exist, class certification is inappropriate.  In essence, Plaintiffs are asking this Court to certify a class because common lawful policies existed and ask the Court to ignore the fact that admitted local manager implementation of these lawful policies prevent common answers mandated for class certification by the Supreme Court in *Dukes*.  Indeed, Plaintiffs fail to even identify the common policies it believes are unlawful.  Instead the "common questions" Plaintiffs identify are just uncontroversial statements of law in question form.  This is circular reasoning and does not demonstrate a common question of law or common answers. *See Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 127 (S.D.N.Y. 2011) ("Defining a class as essentially those customers who have valid FACTA claims is circular."). Assuming the answers to the "questions" stating what the law requires is "yes," that does not resolve the relevant question of whether proposed class members "have suffered the same injury." *Dukes*, 131 S. Ct. at 2551 (citation omitted). Whether each employee was in fact subject to a common lawful meal credit policy does not provide a common answer as to whether an individual manager at a location improperly implemented a lawful policy for that particular employee. These issues require a highly individualized fact-specific analysis not subject to class wide resolution.

Plaintiffs' citing to Defendants' Responses to Plaintiffs' Third Set of Interrogatories does not support their position of commonality either.  Instead it does the opposite.  Defendants' Responses make clear that manager/supervisors had discretion in implementation of these lawful policies at each location.  Under the standard advocated by Plaintiffs, a court would need to certify a class action at every employer that had a policy to pay each employee for all hours worked and for all overtime hours even if the only proof provided was  that one supervisor at one

location for some workers implemented a policy inappropriately.  This is clearly not the correct standard for class certification and it fails here as Plaintiffs cannot show common answers to common questions.

Defendants have consistently made clear the impact that discretionary implementation had in this matter.  For example, in relevant part, Defendants' Responses to Plaintiffs' Third Set of Interrogatories related to meal credit and laundry policies was:

> Defendants further respond:  Notwithstanding the above, at the varying times indicated below the following **Defendant locations had a meal credit policy which was subject to discretionary implementation at the location and supervisor specific level and thus not common to all Defendants or to all employees**: [emphasis added]

Plaintiffs thus cannot rely on these responses in support of their class certification motion as these responses clearly point out the lack of commonality in the claims.  Further, Plaintiffs' attempt to include all Defendant locations is misplaced in that the Interrogatory Responses also clearly state that some locations never had such policies in place at all.  See Response to Interrogatory 2 of Defendants' Responses to Plaintiffs' Third Set of Interrogatories.

In the instant matter, Plaintiffs will be unable to show common answers to common questions as the evidence shows decisions related to the questions identified by Plaintiffs, e.g. meals and uniforms, were made by supervisors and managers at each location subject to each supervisor's or manager's discretion in dealing with each employee.  (See Relevant Facts section above.)  Moreover, there were no meal credits whatsoever at Defendant Fay Da Manufacturing, (Robins SJ Decl. Ex. J, Ma 01-17-19 Tr. 35) and despite this undisputable fact, Plaintiffs still seek certification at this location.  Plaintiffs' motion should therefore be rejected.

Just as in *Dukes* and *Kassman* where a "policy" of "allowing discretion by local supervisors over employment matters" gives no common answer to the question "why was I

disfavored?" *Id*. at 353, 355, similarly here there are no common answers where facially lawful meal and uniform policies are implemented at a discretionary level by supervisors at each location.  Where decisions are decentralized and discretionary, Plaintiffs must prove "a common mode of exercising discretion that pervades the entire company"—"common direction" causing each person to act in a common way. *Id*. at 356. The evidence is clear in this matter that  location specific discretion means common answers do not exist.

Courts consistently hold that where many decision makers across locations exercise discretion in different ways, there is no commonality and thus certification would greatly expand, not economize, the proceedings given the need to analyze each decision. *Dukes*, 564 U.S. at 355-56 ("the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's"); *Moore v. Publicis Grp. SA*, No. 11-1 CV 1279 (ALC)(AJP), 2014 WL 11199094, at *6-7 (S.D.N.Y. May 15, 2014)  ("That many different female MSL employees may have been denied equal pay by a variety of individuals 'for a variety of reasons under a variety of policies in a variety of locations, does not make the questions in each class member's case common to the others.'") (cite omitted).  See *Boykin v. Viacom Inc.*, No. 96 CIV. 8559 (DLC), 1997 WL 706323, at *4 (S.D.N.Y. Nov. 12, 1997).

**C.  Plaintiffs Fail to Establish Typicality Under Rule 23(a)(3)**

Commonality and typicality "tend to merge." *Dukes*, 564 U.S. at 349 n.5. Plaintiff Luo must prove that "'as goes the claim of the named plaintiff, so go the claims of the class.'" *Emilio v. Sprint Spectrum L.P.,* 2017 WL 3208535, at *8 (S.D.N.Y. July 27, 2017). This is impossible where location level supervisors and managers implemented lawful policies at their discretion. See *Trawinski v. KPMG LLP*, 2012 WL 6758059 (S.D.N.Y. Dec. 21, 2012) at *7; *Boykin*  1997 WL 706323  at *5.

Plaintiffs here also cannot show typicality in that the Plaintiff Luo and proposed class representative worked in only 2 locations and in jobs and duties that differed from those of the putative class.  For example, Plaintiff Luo worked as a baker as well as a cashier.  As discussed above, there is no evidence that this location is representative of the other locations sought to be included in this class certification motion.  Further, the position of baker, involved a different job title with different duties than other putative class members.  In particular, it is beyond dispute that all bakers wore white uniforms and had cleaned uniforms available to them each day and a laundry pick up service to launder dirty uniforms.  This makes Plaintiff Luo's claims different.  Her claims are not typical to the allegations by cashiers that their uniforms, consisting of polo shirts and bandanas were not provided in sufficient numbers and not offered with a laundry service.   Plaintiff Luo therefore did not perform similar work and was not subject to similar policies as the alleged putative class and so typicality is not present.

### D.  Plaintiffs and Their Counsel are Not Adequate Representatives as They Have Been Sanctioned, Engaged in Inappropriate Conduct and Have Been Decertified as Inadequate Class Counsel in Other Matters

Federal Rule of Civil Procedure 23(a)(4) requires that in a class action, "the interests of the class" must be "fairly and adequately protect[ed]." Fed. R. Civ. P. 23(a)(4).  Adequacy of representation is evaluated in two ways: (1) by looking to the qualifications of plaintiffs' counsel; and (2) by examining the interests of the named plaintiffs.  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)).  Here there are questions concerning both the adequacy of the class representatives and of class counsel.

First, putative class representatives Plaintiffs Luo and Huang have failed to show they could adequately and fairly protect the interests of the class. (It is unclear if Plaintiff Huang is a proposed Class Representative or not as she is mentioned in the Notice of Motion but not

identified in the Memorandum in Support.)  Plaintiffs Luo and Huang have been sanctioned by the Court in this matter for repeated failures to follow Court directives and Orders.  For example, Plaintiff Luo and Huang failed to appear for a Court Ordered settlement conference and failed to provide estimates of damages.  Magistrate Tiscione later issued an Order sanctioning Plaintiffs Luo and Huang, among other Plaintiffs, (DKT 103) and later issued an order that they pay Defendants' counsel attorneys' fees for improper conduct and flouting of Court Orders.  (DKT 114.)  Significantly, to date Plaintiffs Luo and Huang have still failed to comply with the Court's Order and have not paid the sanction in further disobedience and disrespect to this Court's authority.  Plaintiffs Luo and Huang also failed to respond to discovery requests in a timely fashion and a motion to compel (DKT 109) and Order to Comply under threat of further sanctions including dismissal (DKT 112) were Ordered.  Clearly, Plaintiffs who flout Court Orders and fail to participate in Court ordered proceedings should not be deemed adequate class representative for Rule 23 certification.

Second, Plaintiffs' counsel is also not fairly and adequately able to represent the interests of the class.  Plaintiffs'' counsel has engaged in improper solicitation and communications with putative class members throughout this litigation.  (See DKT 78, 80.)  Despite the fact that a tremendous amount of time and effort on the part of Defendants' counsel and this Court to craft a Collective Action Opt In Notice with appropriate language and specific instruction as to if and how Plaintiffs'' counsel can communicate with putative class members during the opt in period, Plaintiffs' counsel allegedly flouted Court Orders and inappropriately sought, solicited and communicated with putative class members.  Plaintiffs' counsel did so by making calls to putative class members and using contact information produced by Defendants for the sole purpose of the Court ordered opt in notice mailings for inappropriate solicitations.  Plaintiffs'

20

counsel also made wildly inappropriate promises and representations to putative class members that if they just signed up they would get them thousands of dollars for doing nothing.  Further, Plaintiffs' counsel implemented a solicitation campaign on a widely used Chinese language social media site, We Chat, further communicating improperly with putative class members. Plaintiffs' counsel even went so far as to unlawfully appropriate Defendants' company logo and placed it on Plaintiffs' counsel's own envelopes mailed to putative class members with an opt in notice in order to trick putative class members into joining this matter.  Magistrate Tiscione thereafter issued a Protective Order against this inappropriate conduct by Plaintiffs' Counsel. (DKT 80.)

Not surprisingly, upon information and belief, it was the same Plaintiffs who had been improperly solicited who eventually were dismissed with prejudice from this matter for failure to litigate.  Had Plaintiffs' counsel not improperly solicited to begin with, the Court and litigants could have avoided a lot of time and efforts on this issue.  Further, Magistrate Tiscione held open a further sanctions motion to be made in the future.  Such dilatory tactics and flouting of Court orders evidence that Plaintiffs' counsel is not able to fairly and adequately represent the interests of the class, and this Court should not reward such behavior by granting class certification and appointing them as class counsel.

Moreover, although Plaintiffs' counsel represented to the Court that they have been appointed class counsel in other matters (Troy Affirmation, Paragraph 54), Plaintiffs' counsel failed to disclose that in E.D.N.Y. 1:16-cv-05633-ARR-JO *Jin et al v. Shanghai Original Inc. et al*., one of the very matters Plaintiffs' counsel cites in support of its present application, Plaintiffs' counsel was actually removed as class counsel and the entire class was decertified due to Plaintiffs' counsel's "no longer providing zealous, competent representation."  (See *Shanghai*

case Decision and Order 7/10/19, DKT 181.) The *Shanghai c*ourt found "numerous red flags" including "failure to adequately respond to the Court's orders and apparent attempts to delay trial" citing *In re American Exp. Anti-Steering Rules Antitrust Litig.*, Nos. 11–MD–2221 (NGG)(RER), 13–CV– 7355 (NGG)(RER), 2015 WL 4645240, at *12 (E.D.N.Y. Aug. 4, 2015) ("Indeed, class counsel's integrity, loyalty, and adequacy generally are perhaps even more important than the adequacy of class plaintiffs, as '[e]xperience teaches that it is counsel for the class representative and not the named parties, who direct and manage these actions.'" *Id.* *Jianmin Jin v. Shanghai Original, Inc.,* No. 16 CV 5633 (ARR) (JO), 2019 WL 4933607, at *2 (E.D.N.Y. Oct. 7, 2019) (denying motion for relief from the decertification order.)  Clearly, such a track record and failure to disclose this decision to this Court does not support adequate class representation here.

**POINT III PLAINTIFFS CANNOT ESTABLISH THE FRCP 23(b)(3) STANDARD**

Plaintiffs are also seeking class certification under FRCP 23(b)(3). Under this section, Plaintiffs are also required to establish that: (1) the common questions of fact or law predominate over questions affecting individual class members; and (2) a class action is superior to other methods of adjudication. These requirements are "far more demanding" than the commonality and typicality requirements under FRCP 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-624 (1997). These requirements seek to identify cases "in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* at 615 (citation, internal quotation marks and alteration omitted). Plaintiffs cannot demonstrate satisfaction of these more demanding elements of the Rule 23(b)(3) standard and therefore, their motion must be denied.

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* "[A]n issue is common to the class when it is susceptible to generalized, class-wide proof." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006). "[T]o meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litis.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks and citation omitted). Matters pertinent to superiority include the class members' interests in individually controlling the prosecution of separate actions and the likely difficulties in managing the class action. Fed. R. Civ. P. 23(b)(3)(A) & (D). Accordingly, class certification will be denied where the fact-finder would need to establish liability by reviewing "individualized proof" or engaging in "a series of mini-trials" for each putative class member's claim. *See Dauphin v. Chestnut Ridge Transp., Inc.*, 2009 U.S. Dist. LEXIS 74483, *12-14 (S.D.N.Y. Aug. 20, 2009); *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002). Any common issues must be "more substantial than the issues subject only to individualized proof." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538 (2d Cir. 2015); *Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.*, 2018 WL 1831850 (S.D.N.Y. Apr. 17, 2018) (no predominance, despite finding commonality).  Plaintiffs cannot fulfill these requirements.

As argued in the commonality section above, local store managers and supervisors had discretion when implementing the facially lawful policies (e.g., meal credits and uniform policies).  The question of how each local store manager used that discretion to implement the policies with respect to each putative class member will overwhelm any common issues and

force the Court to make potentially hundreds or thousands of individualized trial determinations on very uncommon answers,

If Plaintiffs were subject to unlawful deductions as the result of a manager's improper implementation of a lawful policy for one plaintiff at one location, such a finding has no import to a hypothetical claim for another employee who worked at a different location with different experiences with a different supervisor implementing a lawful policy.  Thus, Plaintiffs have failed to establish the predominance requirement. Furthermore, the need for numerous individualized determinations with respect to *every putative class member* (to determine liability under New York Labor Law) makes Plaintiffs' proposed class action unmanageable, and hence a class action is not superior to other methods of adjudication.

Additionally, Plaintiffs have eight individuals who opted into the lawsuit and are still participating in the FLSA collective action. The collective action is an adequate means of resolving the claims.  Moreover, those that wanted to participate in the suit have already opted in. For Plaintiffs to now attempt to have a class certified, especially after four plus years later after discovery closed and the matter getting ready for trial is inappropriate.  Plaintiffs have failed to establish the Rule 23(b)(3) predominance and superiority requirements and therefore the motion for Rule 23 class certification should be denied. *Severin v. Project Ohr, Inc.*, No. 10 CIV. 9696 DLC, 2012 WL 2357410 (S.D.N.Y. June 20, 2012) (denying Rule 23 class for New York Labor Law claims).

## POINT IV PLAINTIFFS' PROPOSED CLASS NOTICE IS INAPPROPRIATE

Plaintiffs' Proposed Class Notice is inappropriate for myriad reasons.  By way of example, the Notice includes the New Jersey and Connecticut locations that are not even a part of this Motion, references tipped employees although that is not an allegation in this matter, there

24

are red and blue colors in the Proposed Notice and it is not clear what the significance is of these colors.  Defendants have other issues with the Notice but request an opportunity to present them once we see if the Class Certification motion is approved and for what issues and locations, if any.

## V.  CONCLUSION

Rule 23(c)(1) requires motions for class certification to be filed as "early as practicable". In cases with less severe facts than at issue here, courts have repeatedly denied class certification where the motion was not filed as "early as practicable". By delaying for over four years, Plaintiffs prevented the Court from deciding class certification "at an early practicable time" after the commencement of the suit.  Aside from the prejudicially untimeliness of the motion, it fails independently because Plaintiff cannot establish the requirements of Rule 23(a) and (b) and fails with respect to adequate class counsel or representatives.  Accordingly, Plaintiffs' motion should be denied.

Dated: Jericho, New York
      April 17, 2020

                                   LIPMAN & PLESUR, LLP

                    By: /s/ David A. Robins
                        David A. Robins
                        500 North Broadway, Suite 105
                        Jericho, NY  11753
                        Telephone:  516) 931-0050
                        Facsimile:(516) 931-0030

                        LAW OFFICES OF CHRISTOPHER E. CHANG
                        Christopher E. Chang
                        140 Broadway, 46th Floor
                        New York, NY 10005
                        Telephone:(212) 208-1470

                        *Attorneys for Defendants*